UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARA et al.,<br><br>                    Plaintiffs,<br><br>      v.<br><br>SCOTT LACY SALLEY, *also known as* SCOTT LACEY SMITH, *also known as* SCOTT J. SMITH,<br><br>                    Defendant. | CASE NO. 2:23-cv-00803-LK<br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT |

This matter comes before the Court on Plaintiffs' Motion for Default Judgment. Dkt. No. 19. Having reviewed the motion, Plaintiffs' supporting materials, and the remainder of the record, the Court grants in part Plaintiffs' motion and enters default judgment against Defendant Scott Lacy Salley as set forth below.

## I.   BACKGROUND

Plaintiffs "Cara," "Jenny," and "Lily" are victims depicted in child pornography materials, and these videos and images were found in Defendant's possession. Dkt. No. 1 at 2 ("Each of the plaintiffs is a person who was sexually abused as a child and whose sexual abuse is depicted in

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT - 1

images of child pornography seized from defendant's possession.").[1] On October 17, 2022, Defendant pleaded guilty in the Western District of Washington to Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and was sentenced on February 23, 2023. *See United States v. Salley*, 2:20-cr-00220-RSL, Dkt. Nos. 42–46, 59–60 (W.D. Wash.). The court entered three amended judgments against Defendant on March 3, 2023, March 7, 2023, and April 20, 2023, respectively. *Id.* Dkt. Nos. 62–64. The third amended judgment ordered Defendant to pay restitution to Plaintiffs. *Id.* Dkt. No. 64 at 8.[2]

After receiving notice from the U.S. Department of Justice's Victim Notification System that their child sexual abuse materials were illegally received by Defendant, Plaintiffs initiated this action to recover damages pursuant to 18 U.S.C. § 2255(a), sometimes referred to as "Masha's Law." Dkt. No. 1 at 1–2, 4; Dkt. No. 19 at 2. Specifically, Plaintiffs seek $150,000 each in liquidated damages, as well as reasonable attorney's fees and costs. Dkt. No. 1 at 5–6. On July 13, 2023, Plaintiffs filed an affidavit of service attesting that Defendant was served at his place of incarceration with a copy of the summons and complaint. Dkt. No. 9 at 2; Dkt. No. 10 at 2; *see also* Dkt. No. 14 at 1. Following Defendant's failure to appear or defend in this action, Plaintiffs moved for an entry of default and the Clerk of Court entered default on November 8, 2023. Dkt. Nos. 13, 17. Plaintiffs thereafter moved for default judgment. Dkt. No. 19. In their motion, Plaintiffs seek liquidated damages in the amount of $450,000, as well as $15,985 in attorney's fees and $555.56 in costs. *Id.* at 4, 10–11.[3] The Court requested supplemental briefing on the *Eitel* factors, which Plaintiffs timely submitted. Dkt. Nos. 24, 26–27.

---

[1] On November 6, 2023, the Court granted Plaintiffs' motion to proceed with pseudonyms. Dkt. No. 16.

[2] In their complaint, Plaintiffs appear to misstate the date of Defendant's sentencing, Dkt. No. 1 at 3, but the Court may take judicial notice of the correct date, *see* Fed. R. Evid. 201; *Lily v. Fuechtener*, No. 2:19-CV-00352-RFB-EJY, 2020 WL 10695385, at *3 n.1 (D. Nev. Feb. 3, 2020).

[3] Although not included in their motion for default judgment, Plaintiffs request additional sums in their declarations.

## II. DISCUSSION

**A.   Jurisdiction**

Before entering default judgment, district courts must evaluate subject matter and personal jurisdiction. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."). In this case, the Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 2255(a). *See* Dkt. No. 1 at 3. Likewise, the Court has personal jurisdiction over Defendant because Plaintiffs allege that Defendant "resides within the Western District of Washington," *id.* at 2, and Plaintiffs served the summons and complaint on him in this district. *See* Dkt. Nos. 9–10; *see also* 18 U.S.C. § 2255(c)(2) (permitting nationwide service in any district in which the defendant is an inhabitant or may be found); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (personal jurisdiction over a defendant may be acquired by personal service on that defendant). In addition, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)–(c) and 18 U.S.C. § 2255(c)(1), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district and Defendant resides in this district. *See* Dkt. No. 1 at 3.

**B.   Legal Standard**

Default judgment may be entered in favor of a plaintiff if the defendant has defaulted by failing to appear. Fed. R. Civ. P. 55(a)–(b); LCR 55(a)–(b). Upon a plaintiff's application, courts have discretion to enter default judgment. *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986). Default judgments are ordinarily disfavored, and cases should be decided

---

Specifically, they seek an additional $560 in fees on behalf of Deborah A. Bianco's paralegal, Dkt. No. 21 at 4, as well as $7,412.50 in fees incurred by Margaret Mabie and her colleagues, Dkt. No. 22 at 5–6, which increases the total fee request to $23,957.50.

on their merits if reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Courts may consider the following factors in deciding whether to grant a motion for default judgment (collectively, the "*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72. Upon default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). However, these allegations must establish the relief to which plaintiff is entitled. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Accordingly, "necessary facts not contained in the pleadings, and the claims which are legally insufficient, are not established by default." *Cripps*, 980 F.2d at 1267. In addition, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**C.    Plaintiffs Are Entitled to Default Judgment**

The Court has considered the *Eitel* factors and finds that an entry of default judgment is appropriate in this case.

### 1. The Possibility of Prejudice to Plaintiffs

The first *Eitel* factor considers the possibility of prejudice to the plaintiff, which "exists where the plaintiff has no recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (cleaned up). Plaintiffs initiated this action in May 2023, and to date, Defendant has failed to plead or otherwise defend against their claims. Plaintiffs thus face a possibility of prejudice because they are left without a legal remedy absent entry of default judgment. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-

LK, 2022 WL 279030, at *3 (W.D. Wash. Jan. 31, 2022).

    2.  <u>The Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint</u>

"The second and third *Eitel* factors—the substantive merits of the claim and the sufficiency of the complaint—are often analyzed together." *Curtis*, 33 F. Supp. 3d at 1211. In evaluating these factors, the Court considers whether the allegations in the complaint are sufficient to state a claim on which Plaintiffs may recover. *See Danning*, 572 F.2d at 1388.

Section 2255(a) provides that:

> Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2255(a). "The point of this provision is to allow such victims to recover without having to endure damages hearings." *Jesness v. Bridges*, No. C18-1225-RSM, 2021 WL 2895129, at *1 (W.D. Wash. July 9, 2021) (citing *Doe v. Boland*, 698 F.3d 877 (6th Cir. 2012)); *see also Fuechtener*, 2020 WL 10695385, at *2 ("Section 2255(a) . . . makes clear the intent of the federal government to ensure victims of certain crimes, such as Plaintiffs, receive compensation for personal injuries for which they may sue in the United States District Court.").

In this case, taking the allegations in the complaint as true, Plaintiffs have adequately established that they were victims of Defendant's violations of an enumerated predicate offense under 18 U.S.C. § 2252(a)(2) and (b)(1) and have suffered a personal injury. *See* Dkt. No. 1 at 2–5; *United States v. Salley*, 2:20-cr-00220-RSL, Dkt. No. 64 at 8 (W.D. Wash. Apr. 20, 2023); *see also, e.g.*, *Doe v. Vazquez*, No. 2:22-CV-200-JLB-KCD, 2023 WL 2930755, at *4 (M.D. Fla. Feb. 3, 2023), *report and recommendation adopted*, 2023 WL 3121599 (M.D. Fla. Apr. 27, 2023); *Doe*

*v. Wairi*, No. CV 22-10091-RGS, 2023 WL 319852, at *2 (D. Mass. Jan. 19, 2023); *Rasmussen v. Hickey*, No. 20-CV-411-LAB (JLB), 2021 WL 5827108, at *4 (S.D. Cal. July 12, 2021); *Talley v. Chanson*, No. 13-CV-1238-CAB-BLM, 2015 WL 11237666, at *3 (S.D. Cal. Feb. 25, 2015). Because Plaintiffs' claim under 18 U.S.C. § 2255(a) has merit and their complaint sufficiently alleges the necessary elements of that claim, the Court finds that these factors weigh in favor of default judgment.

### 3. The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). Here, Plaintiffs seek $450,000 in liquidated damages as well as somewhere between $16,000 and $24,000 in attorney's fees and costs. *See* Dkt. No. 19 at 4, 10–11; Dkt. No. 20 at 2–3; Dkt. No. 27 at 4; 18 U.S.C. § 2255(a) (permitting recovery of liquidated damages in the amount of $150,000 as well as costs and reasonable attorney's fees). For the reasons laid out elsewhere in this Order, the Court finds that Plaintiffs are entitled to recover $450,000 in liquidated damages, $14,428.96 in attorney's fees and costs, and post-judgment interest pursuant to 28 U.S.C. § 1961(a). Although the total amount at stake in this action is relatively high, it is proportional to Defendant's alleged conduct as legislated by Congress and in line with similar cases. *See, e.g.*, *Rasmussen*, 2021 WL 5827108, at *5 (awarding $600,000 in statutory damages for four predicate offenses). Accordingly, this factor weighs in favor of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

As for the fifth factor, no genuine issue of material fact exists. Once default is entered, well-pleaded factual allegations in the operative complaint are taken as true except for the allegations relating to damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18.

### 5. Whether the Default Was Due to Excusable Neglect

Turning to the sixth factor, the record contains no indication that Defendant's default was due to excusable neglect. Defendant was given sufficient notice of this action through service of the summons and complaint. *See* Dkt. No. 10 at 2 (affidavit of service); *see also* Fed. R. Civ. P. 4(e); *United States v. Joseph*, No. 8:23-CV-1015-KKM-JSS, 2023 WL 8261327, at *2 (M.D. Fla. Nov. 8, 2023) (affidavit of service indicating that personal service was made on defendant by delivering a copy of the summons and complaint to defendant at her place of incarceration sufficient under Federal Rule of Civil Procedure 4(e)), *report and recommendation adopted*, 2023 WL 8254359 (M.D. Fla. Nov. 29, 2023). Because there is no evidence of excusable neglect, this *Eitel* factor favors the entry of a default judgment. *See Axis Ins. Co. v. Yedor*, No. CV-15-03480-SJO (AGRx), 2015 WL 13914888, at *6 (C.D. Cal. Oct. 1, 2015) (finding no excusable neglect where incarcerated defendant served with summons and complaint at place of incarceration); *United States v. Sundberg*, No. C-09-4085-EMC, 2011 WL 3667458, at *5 (N.D. Cal. Aug. 22, 2011) (same); *Marcelos v. Dominguez*, No. C08-00056-WHA, 2009 WL 230033, at *4 (N.D. Cal. Jan. 29, 2009) (same).

### 6. The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

Finally, the Court is aware that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive," because Rule 55 allows a court to issue a default judgment if the defendant fails to appear and defend. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (cleaned up). Therefore, although the Court is cognizant of the policy in favor of decisions on the merits, that policy does not preclude the entry of default judgment where, as here, Defendant has failed to appear or defend and the other *Eitel* factors weigh in favor of entering a default judgment.

Accordingly, for the reasons discussed above, the Court finds that the *Eitel* factors weigh in favor of entry of default judgment.

**D.     Plaintiffs Are Entitled to Some of the Relief They Seek**

Having found that entry of default judgment is warranted, the Court turns to the relief Plaintiffs seek.

1. Statutory Damages

As discussed above, a plaintiff who successfully states a claim under 18 U.S.C. § 2255(a) "shall recover . . . liquidated damages in the amount of $150,000[.]" In this case, Plaintiffs seek $150,000 each in liquidated damages as a result of Defendant's violations. Dkt. No. 1 at 5. Based on the clear statutory language and the undisputed allegations in this matter, the Court finds that a $150,000 award to each Plaintiff is proper. *See* 18 U.S.C. § 2255(a); *see also, e.g.*, *Vazquez*, 2023 WL 2930755, at *4; *Wairi*, 2023 WL 319852, at *2; *Rasmussen*, 2021 WL 5827108, at *4; *Talley*, 2015 WL 11237666, at *3.

2. Attorney's Fees

In addition, Plaintiffs request an award of attorney's fees and costs. *See* Dkt. No. 19 at 4–11. Section 2255(a) authorizes district courts to award "the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred." 18 U.S.C. § 2255(a). The Court awards Plaintiffs a total of $14,428.96 in attorney's fees and costs.

To establish the reasonableness of their requested attorney's fees, Plaintiffs use the "lodestar" method, Dkt. No. 19 at 5, which involves multiplying the number of hours reasonably expended on the claim or motion by a reasonable hourly rate, *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987); *see also* LCR 55(b)(2)(C). In calculating the lodestar figure, the Court may enhance or reduce the lodestar figure based upon consideration of any of the relevant factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on*

*other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). In this case, although "Plaintiffs are not asking for any upward adjustment to the lodestar," Dkt. No. 19 at 10, the relevant *Kerr* factors include: the time and labor required, the novelty and difficulty of the questions involved, the requisite skill required, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, and awards in similar cases, *id.* at 8–9; *see Kerr*, 526 F.2d at 70.

Before calculating the lodestar figure, however, the Court must parse through the discrepancies and deficiencies in Plaintiffs' filings. First, in their motion for default judgment, Plaintiffs refer to "*three* lawyers with deep experience in representing victims of child pornography," Dkt. No. 19 at 10 (emphasis added), but seek fees of $15,985.00 based on *two* lawyers' time: (1) 13.3 hours billed at an hourly rate of $450 by Deborah A. Bianco ($5,985), and (2) 20 hours billed at an hourly rate of $500 by Carol L. Hepburn ($10,000), *id.*; *see also* Dkt. No. 20 at 4–5; Dkt. No. 21 at 3–4, 6–7. Separately, Margaret Mabie, a partner at the Marsh Law Firm, submitted a declaration seeking $7,412.50 on behalf of herself, paralegals, and another partner at her firm for 17.5 hours billed at hourly rates ranging from $125 to $950. Dkt. No. 22 at 2, 5–6. Ms. Bianco's declaration also requests an additional $560 on behalf of her paralegal, Lesley Roberts, for 2.8 hours billed at an hourly rate of $200. Dkt. No. 21 at 4.[4] And in their proposed order, Plaintiffs seek $23,397.50 in attorney's fees, which the Court presumes is comprised of $5,985 billed by Ms. Bianco, $10,000 billed by Ms. Hepburn, and $7,412.50 billed by Ms. Mabie and her colleagues. Dkt. No. 23 at 2–3. Because "requests for affirmative relief must be made in a motion," *Sergeant v. Bank of Am., N.A.*, No. C17-5232-BHS, 2018 WL 1427345, at *1 n.2 (W.D.

---

[4] In her declaration, Ms. Bianco attests that the "total for legal work performed . . . by [her]self and Ms. Roberts in this matter at [thei]r usual hourly rates is $6,245.00," which is not an accurate summation of her billable hours ($5,985) and her paralegal's billable hours ($560). Dkt. No. 21 at 3–4.

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT - 9

Wash. Mar. 22, 2018) (citing LCR 7(b)(1), 7(k)), the Court considers only those requests that appear in Plaintiffs' motion.

Plaintiffs' submissions also unnecessarily complicate the Court's evaluation of the reasonableness of their attorney's fee request. For instance, Ms. Hepburn's declaration provides a topline description of her 20 hours billed in this case, but does not include even a general breakdown of how much time she spent on which tasks. *See* Dkt. No. 20 at 3–4. The Ninth Circuit has held that plaintiffs' counsel are "not required to record in great detail how each minute of [their] time was expended," but they still must list their hours and identify "the general subject matter of [their] time expenditures." *Fischer*, 214 F.3d at 1121 (cleaned up); *see also* LCR 55(b)(2)(A), (C). It is counsel who "bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) ("The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested.").[5] Moreover, Plaintiffs bear the burden of producing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Plaintiffs acknowledge this standard, Dkt. No. 19 at 7–10, but do not specify why their hourly rates of $450 (Ms. Bianco), $475 (Ms. Mabie), and $500 (Ms. Hepburn) are reasonable, *see* Dkt. Nos. 20–22. Further, as noted above, Ms. Bianco's request in her declaration for $560 for 2.8 hours billed by

---

[5] In addition, Plaintiffs' motion states that Ms. Hepburn requests "$10,000 for attorney time spent as set forth in her declaration, *and including* paralegal and law clerk time," Dkt. No. 19 at 10 (emphasis added), but Ms. Hepburn attests in her declaration that she is seeking "$10,000 in legal fees and *does not* count the work of [her] paralegal," Dkt. No. 20 at 4 (emphasis added).

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT - 10

her paralegal is not included in either the motion for default judgment or Plaintiffs' proposed order. Dkt. No. 21 at 4; *see generally* Dkt. Nos. 19, 23. And Ms. Mabie's submission includes time billed by colleagues which she does not attempt to substantiate in her declaration. Dkt. No. 22 at 5–6. Last, the total attorney's fees requested in Plaintiffs' motion is different than those requested in their proposed order. *Compare* Dkt. No. 19 at 10–11 (requesting fees totaling $15,985), *with* Dkt. No. 23 at 2–3 (requesting fees totaling $27,397.50). Again, the motion controls.

Despite these problems, the Court addresses the relevant factors below.

*(a) Reasonable Hourly Rates*

Reasonable hourly fees "are to be calculated according to the prevailing market rates in the relevant community[.]" *Blum*, 465 U.S. at 895. The relevant community "is the forum in which the district court sits," *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008), and courts may consider "rate determinations in other cases." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "The Court may also rely on its own knowledge and familiarity with the legal market in setting a reasonable rate." *Abrams v. Sequium Asset Sols., LLC*, No. 21-CV-05374-LK, 2023 WL 2757195, at *4 (W.D. Wash. Mar. 31, 2023) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam)). "An attorney's hourly rate is reasonable if it does not substantially exceed 'the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" *Waters v. Mitchell*, No. C21-0087-JLR, 2023 WL 3304217, at *11 (W.D. Wash. May 8, 2023) (quoting *Chalmers*, 796 F.2d at 1210–11).

Here, the Court finds that, based on its familiarity with the prevailing rates in this community, Ms. Bianco's requested hourly rate of $450 and Ms. Hepburn's requested hourly rate of $500 are both reasonable for attorneys with their levels of experience. *See* Dkt. No. 21 at 1–4; Dkt. No. 20 at 2–4; *see also, e.g.*, *Reynolds v. Life Ins. Co. of N. Am.*, No. C21-1424-TSZ, 2023

WL 8717164, at *4 (W.D. Wash. Dec. 18, 2023), *appeal docketed*, No. 24-309 (9th Cir. Jan. 18, 2024); *Gnassi v. Toro*, No. 3:20-CV-06095-JHC, 2023 WL 5277798, at *4 (W.D. Wash. Aug. 16, 2023); *Hawkins v. Ace Am. Ins. Co.*, No. 21-CV-01459-RAJ, 2023 WL 2584909, at *1–2 (W.D. Wash. Mar. 21, 2023). Indeed, they each have more than 40 years of practice experience and specialize in this area of law. Dkt. No. 20 at 2; Dkt. No. 21 at 1–2.

      *(b) Reasonable Number of Hours*

With respect to the reasonableness of the number of hours billed, the Court again notes that Plaintiffs bear "the burden of documenting the hours expended on this matter and establishing their reasonableness." *UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1137 (W.D. Wash. 2019). The Ninth Circuit has "recognized that attorneys' fees awards can be reduced where a party block bills 'because block billing makes it more difficult to determine how much time was spent on particular activities.'" *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 245 (9th Cir. 2021) (quoting *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007)); *see also id.* (holding that "it was improper for the district court to grant in full an attorneys' fees request that was based largely on block billing where there was significant overlap in time billed for the same work between attorneys and it was difficult to ascertain how much time was spent on specific tasks").

Here, Ms. Hepburn provides no time entries whatsoever. *See generally* Dkt. No. 20. Because Ms. Hepburn does not supply the Court with time records that allow the Court to verify that the amount of time she spent was reasonable and necessary to litigate Plaintiffs' claims, the Court reduces her hours by 20 percent. *See Fischer*, 214 F.3d at 1121; *Waters*, 2023 WL 3304217, at *12; *Little Genie Prods. LLC v. PHSI Inc.*, No. 2:12-CV-00357-RSM, 2014 WL 3050326, at *10 (W.D. Wash. July 2, 2014). In contrast, the Court finds that the 13.3 hours Ms. Bianco expended were both reasonable and supported by adequate documentation. Dkt. No. 21 at 6–7.

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT - 12

Therefore, upon thorough review of the record, the Court concludes that 29.3 total hours is a reasonable amount of time expended by Plaintiffs' counsel in this case, comprised of 16 hours by Ms. Hepburn and 13.3 hours by Ms. Bianco.

Accordingly, Plaintiffs are entitled to a total of $13,985 in attorney's fees:

| Attorney | Reasonable Hourly Rate | Reasonable Number of Hours | Total |
|---|---|---|---|
| Ms. Bianco | $450 | 13.3 | $5,985 |
| Ms. Hepburn | $500 | 16 | $8,000 |

*(c) Costs*

With respect to costs, Plaintiffs are entitled to "the cost of the action, including . . . other litigation costs reasonably incurred." 18 U.S.C. § 2255(a). Plaintiffs state that their request for $555.56 in costs in this case "are itemized in the Declarations of Counsel." Dkt. No. 19 at 10. However, only a portion of their requested costs are in fact itemized. *See* Dkt. No. 21 at 4 (itemized costs in Ms. Bianco's declaration totaling $432.96, including $402 for the filing fee). Ms. Hepburn attests that she "expended costs in the amount of $122.60 which includes $11.00 for parking in downtown Seattle to accomplish the evidence review," but does not specify what the other $111.60 was spent on. Dkt. No. 20 at 4–5. Thus, the Court finds that Plaintiffs have adequately supported only a portion of their requested costs, totaling $443.96 ($432.96 in itemized costs listed by Ms. Bianco and $11 in itemized costs listed by Ms. Hepburn). Accordingly, Plaintiffs are entitled to only that amount.

3. Interest

Plaintiffs request pre- and post-judgment interest in their complaint, Dkt. No. 1 at 5–6, but do not request such relief as part of the instant motion, *see* Dkt. Nos. 19, 23. Plaintiffs will therefore not be awarded prejudgment interest. However, post-judgment interest on a district court judgment is mandatory under the provisions of 28 U.S.C. § 1961, and will be included in the judgment. *See*

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT - 13

*Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995).

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiffs' Motion for Default Judgment. Dkt. No. 19. Default judgment shall enter in favor of Plaintiffs and against Defendant, as follows:

1. Plaintiffs are AWARDED $150,000 each in liquidated damages pursuant to 18 U.S.C. § 2255(a), for a total of $450,000;

2. Plaintiffs are AWARDED $13,985 in attorney's fees pursuant to 18 U.S.C. § 2255(a);

3. Plaintiffs are AWARDED $443.96 in costs pursuant to 18 U.S.C. § 2255(a);

4. Post-judgment interest shall accrue on this judgment pursuant to 28 U.S.C. § 1961(a).

Dated this 29th day of April, 2024.

*Lauren King*

Lauren King
United States District Judge